BRADLEY N. CUMINGS *vs.* WILLIAM H. Y. HACKETT, executor.

In the first clause of an indenture between T. and C., T. leased a house to C. for five years at a certain rent and reserved " the right to terminate this lease by giving six months' notice." In the second clause C. agreed to pay the rent so long as he should occupy the house, and to furnish board and lodging there free of charge to T. during such occupancy. In the third clause T. covenanted that C. should " have the right to occupy and let or use and take the income " of the premises " for and during the further term of five years from the thirtieth day after the decease of T., paying only therefor the taxes " " and keeping the buildings insured " in a certain sum; and further agreed " to make suitable provision by will or otherwise that this agreement shall be kept and performed by his legal representatives after his decease." When this instrument was made T. and C. had long been friends, and C. had a family, but T. was sick and unmarried. C. entered and occupied the house under it, and lodged and boarded T. there for two years, when T., having recovered his health, married and terminated the lease by giving the notice stipulated, and then sold and conveyed the premises as free from incumbrances, and died seventeen years after the termination of the lease, making no provision for C. in his will. *Held*, that the right of revocation reserved by T. in the first clause of the instrument did not apply to his executory agreement in the third clause, and that C. might maintain an action against T.'s executor for the breach thereof.

CONTRACT, brought September 17, 1866 for breach by the defendant's testator, Robert W. Traip, of his agreement in

the last paragraph of the following indenture between him and the plaintiffs, signed and sealed on the date thereof:

" Memorandum of an agreement made this 12th day of May, 1845, by and between Robert W. Traip of Boston, merchant, of the first part, and Bradley N. Cumings of said Boston, merchant, of the second part.

" The said Traip on his part agrees to lease and does hereby lease unto the said Cumings the house and land thereto belonging situate and numbered 506 in Washington Street in said Boston, for the term of five years from the date hereof, at the annual rate of two hundred dollars, payable semi-annually; and said Traip agrees to keep the said premises in good repair during said term, but reserves to himself the right to terminate this lease by giving six months' notice of his intention so to do to said Cumings.

" The said Cumings hereby agrees to pay at the rate of said annual rent the semi-annual payments while and so long as he shall occupy said house under said agreement, and to take reasonable and proper care thereof, and to furnish suitable and convenient lodging and sitting-rooms therein and board to said Traip, free of charge, while he shall see fit to remain and make his home in said house during the occupancy of said Cumings.

" And the said Traip hereby covenants and agrees with said Cumings, his executors and administrators, that the said Cumings, his heirs, executors, and administrators, shall have the right to occupy and let or use and take the income of the said house and lot of land whereon the same is built, or the buildings which may then be thereon, for and during the further term of five years from the thirtieth day after the decease of said Traip, paying only therefor the taxes which may be assessed thereon during said term of five years, and keeping the buildings now on said and, or which may be then thereon, insured in the sum of seven thousand dollars; and the said Traip hereby agrees to make suitable provision, by will or otherwise, that this agreement shall be kept and performed by his legal representatives after his decease."

The case was reserved for determination by the full court on facts agreed substantially as follows:

Traip and the plaintiff, being friends of long standing, made the agreement alleged. The plaintiff had a family. Traip was an invalid, forty-six years old and unmarried, and had retired from business. Under the agreement, the plaintiff entered and occupied the house and land, and Traip occupied rooms in the house and was boarded by the plaintiff until 1847, when, having recovered his health, Traip married and terminated the lease by giving the notice provided for. Traip then reëntered the house and land, and occupied them until January 5, 1852, when he sold them, as free from incumbrances, to one John D. Weld, and removed to Kittery in Maine, where he died on November 9, 1864, leaving a widow, and making no provision for the plaintiff in his will. On January 8, 1852, the plaintiff caused the agreement to be recorded in the registry of deeds for Suffolk.

It was agreed that if it should be determined that the action could be maintained on these facts, the case should stand for trial for assessment of the plaintiff's damages; otherwise judgment to be entered for the defendant.

*H. W. Paine*, for the plaintiff.

*F. W. Hackett*, for the defendant. The contract was an entirety, and the reserved right of revocation extended throughout. By notice and reëntry Traip terminated all rights of the plaintiff under the instrument. The word "agreement" makes no difference. *John* v. *Jenkins*, 3 Tyrwh. 170. *Wright* v. *Trevezant*, 3 C. & P. 441. The meaning of the instrument will be drawn not only from its terms, but from concurrent or subsequent acts of the parties. *Chapman* v. *Bluck*, Arnold, 27. Although their intent be in opposition to the strict letter of the contract, it must prevail when clearly ascertained from it. Met. Con. 303. *Browning* v. *Wright*, 2 B. & P. 13. *Hathaway* v. *Power*, 6 Hill, 453. *Tracy* v. *Albany Exchange Co.* 3 Seld. 472. In *Weld* v. *Traip*, 14 Gray, 330, it was not necessary to pass upon the question whether the reservation operated on the whole lease.

The defendant contends that the instrument was meant to be merely a lease with a change from real to nominal rent consequent on the death of Traip within five years, the probability of which was the leading idea of both parties; and that their intent is deducible that the lease should continue for five years only from its date, if the lessor should live so long, and, if otherwise, then five years and thirty days from his death. If Traip had died within the first five years, how would the plaintiff have held the premises? Under the first clause; or the last clause; or under the whole instrument? Did the parties possibly mean to separate the two terms in time, and contemplate that Traip should possibly bind himself through life never to sell the house, even if he should live nearly twenty years, as he did, but always have it ready for occupancy by Cumings on thirty days' notice?

Gray, J. The words and order of the clauses, the nature and manifest purpose of the instrument, and the relations of the parties at the time of its execution, all tend to show that Traip's right of termination by giving six months' notice was limited to the lease, contained in the first part of the instrument, for a term of five years from its date, and did not apply to the subsequent covenant for an additional term after his death.

The right reserved is " to terminate this lease," and is inserted between the lessor's words of demise, and the tenant's promise to pay rent and to lodge and board his landlord during the first term. The only " lease," or present demise of an estate, was that contained in the first part of the instrument. The covenant in the latter part was but an executory agreement for the creation of a further term by the lessor or his representatives in the future. *Weld* v. *Traip,* 14 Gray, 330. The lessee, during the first term, was to pay a certain rent in money, and to provide a home for his landlord on the premises; but during the second term he might either use the whole premises himself or underlet them for his own benefit, and was to pay nothing by way of rent beyond the amount of taxes and insurance. The real consideration for the lessor's final covenant manifestly was the arrangement made in the previous clauses for his own accommodation and convenience; and a right to absolve himself or his

representatives from this covenant, after receiving all the benefit which he wished from the provisions in his own favor, is not to be inferred. When the instrument was executed, the parties had long been friends, the plaintiff had a family, Traip had none, and was an invalid, and might naturally wish at once to benefit his friend and to secure a home for himself; and neither Traip nor his administrator can be allowed, after the unexpected recovery of his health and change in his circumstances, to exercise any right, not distinctly reserved in the instrument, of revoking the covenant which, when sick and in need of care, he had made with the plaintiff.

According to the agreement of the parties the case is to stand for trial to assess the damages for the breach of the defendant's covenant.